### Ex parte CHATTANOOGA BAR ASSOCIATION, Petitioner.

Supreme Court of Tennessee.

June 12, 1978.

OPINION

FONES, Justice.

The Chattanooga Bar Association has petitioned this Court for a determination of the following questions, to clarify procedures under Supreme Court Rule 42:

(1) Whether or not the Chattanooga Bar Association may continue to refer complaints to special masters, appointed by the Chancery Court of Hamilton County, pursuant to the opinion of this Court in *Ex Parte Chattanooga Bar Association*, 206 Tenn. 7, 330 S.W.2d 337 (1959).

(2) Whether or not the Chattanooga Bar Association may investigate and bring disciplinary proceedings in a court of competent jurisdiction pursuant to T.C.A. § 29–309,

"both with respect to grievance matters raised before and after the adoption of Rule 42."

(3) Whether the Chattanooga Bar Association may continue to police and prohibit unauthorized practice of law by laypersons.

(4) Whether the Chattanooga Bar Association may continue to arbitrate fee disputes between attorneys and their clients.

We have heard oral argument on behalf of petitioner and the Disciplinary Board of the Supreme Court.

I.

In 1959, the Chattanooga Bar Association filed a petition in the Chancery Court of Hamilton County, cause No. 35121, seeking the appointment of special masters for the purpose of conducting an inquiry into the unethical, unlawful and improper practices of attorneys in Hamilton County. The petition alleged that an increasing number of complaints against lawyers had been lodged with the Association complaining of violations of the law and of the legal ethics of the profession; that illegal and unethical practices had "increased to such an extent as to become open and notorious in the minds of the public not only in Hamilton County but throughout the area, bringing into contempt and disrepute not only the vast majority of attorneys and judges whose conduct is in conformity with the highest standards of the legal profession but also to cause public distrust of the judicial processes and administration of justice in the county to the detriment of the public welfare."

The Bar Association alleged that its grievance committee was unable to stop the increasing number of illegal and unethical practices which were prevalent in Hamilton County, because of its limited authority, and asserted that unless the Court took appropriate steps to control the conduct of attorneys, the unethical practices would "multiply" to the detriment of the public and the administration of justice in Hamilton County.

The Chattanooga Bar Association alleged that primarily the violations were (1) fomenting litigation and soliciting employment; (2) accepting employment where a conflict of interest exists and using confidential information obtained in violation of the fiduciary relationship; (3) fee splitting; (4) failure or refusal to account promptly and properly for funds obtained or held in a fiduciary capacity; (5) obtaining employment contracts, statements of witness and other legal documents under duress, misrepresentation and other improper circumstances; (6) contacting directly an adverse party represented by his own attorney.

The Chancellor appointed counsel to assist and advise the court and to oppose the petition, if in their judgment, such course was right and proper.

A motion to dismiss on the following grounds was filed and sustained:

"(1) no offending attorney was named or otherwise identified; (2) the court is without jurisdiction to order a general investigation into the conduct of attorneys; (3) the relief sought is foreign and unknown to the jurisdiction of the court; and (4) the jurisdiction for this type of petition is exclusively in the Supreme Court of Tennessee." 206 Tenn. at 12, 330 S.W.2d at 339.

On appeal, Mr. Chief Justice Neil speaking for the Court said this:

"There is no merit in the contention that the petition should be dismissed because no person or persons are named, or otherwise described, as offenders against the honor and dignity of the court or the legal profession. But the Chancery Court and all other courts in Hamilton County are named as victims of unethical practice by officers of the courts, and who are sworn to protect its power and authority. The petition portrays a condition which we are bound to accept as true. The proper administration of justice in the courts of this State is paramount to all other matters, and requires the utmost vigilance by judges and officers alike to the end that its judgments and decrees bear no taint of dishonor. Considering the nature of the charges specifically pointed out in the petition the Chancellor must exercise his inherent authority to inquire as to *who it is among many officers* who are doing these dastardly things, and what judgments and decrees are affected thereby." (Emphasis added.) 206 Tenn. at 13–14, 330 S.W.2d at 340.

Cases from other jurisdictions were cited supporting the principle that the court has inherent power to direct a general inquiry into the conduct of its own officers, when confronted with rampant unethical practices that threaten the integrity and honor of its own processes, judgments and decrees.

The Chancellor's decree dismissing the petition was reversed and the cause was remanded with directions to appoint special commissioners "to conduct the investigation as prayed for under the strict supervision of the Chancellor." 206 Tenn. at 18, 330 S.W.2d at 342.

The present petition exhibits two orders of the Chancery Court of Hamilton County in the cause remanded by this Court in December, 1959. The first order, dated May 24, 1960, appoints fifteen special masters who were members of the Hamilton County Bar, and three special masters who were members of the bar in the counties comprising the Twelfth Chancery Division of Tennessee. The jurisdiction of the latter three appointees was limited to offenses by Hamilton County lawyers committed within the Twelfth Chancery Division. The second petition, dated April 4, 1977, appoints thirteen special masters, all of whom are apparently members of the Hamilton County Bar, and none of whom were among the fifteen appointed in 1960. The 1977 order expresses the court's gratitude for the long and faithful services of the prior group of special masters and recites that the responsibilities of special masters should be "shouldered" by different attorneys from time to time, which implicitly was the sole purpose of the order, as no express duties are mentioned therein.

The present petition alleges that the 1959 cause remains on the Chancery Court docket; that since the adoption of Rule 42 on December 18, 1975, the Chattanooga Bar Association has continued to receive complaints against its members and to conduct investigations through its grievance committee and "in conjunction with the Special Masters designated by the Chancery Court, pursuant to the authority of T.C.A. § 29–309 and the decision of this Court in *Ex Parte Chattanooga Bar Association, supra.*" The petition then suggests that this Court's enabling order in Rule 42 reciting exclusive jurisdiction in the Supreme Court to discipline attorneys is in apparent conflict with T.C.A. § 29–309 and the 1959 decision of this Court, and asks for clarification and guidance with respect to pending disciplinary matters in Hamilton County.

In our opinion, the 1959 decision of this Court authorized the appointment of special masters for a special and temporary purpose, to wit: to conduct a "general inquiry" into unethical and unlawful practices by Hamilton County lawyers, in response to the assertions by the Chattanooga Bar Association that it could not cope with the magnitude of the unethical practice that then prevailed. It is significant that this Court remanded the case with directions to conduct the investigation "as prayed for." The necessary objective of the relief granted was to bring under control a temporary situation and stamp out or substantially reduce unethical practices. There was no prayer for a permanent or continuing disciplinary enforcement procedure for Hamilton County.

There are no allegations in the present petition that unethical practices of Hamilton County lawyers are so widespread and pervasive that extraordinary measures are required to bring such conduct within manageable limits. We believe we are entitled to, and we do assume, that the special masters appointed in 1960, together with the good offices of the distinguished chancellors that have served Hamilton County in the nineteen-year interval, have brought the unethical practices that existed in 1959 under control, that the necessity for a "general inquiry" as a means of focusing upon and disciplining those responsible for corrupting the processes of the courts no longer exists, and that the volume of disciplinary complaints in Hamilton County is not out of proportion to other comparable areas of Tennessee.

We do not believe that it was the intention of this Court in 1959 to establish a permanent disciplinary procedure to prevail in Hamilton County as an alternative to at least three other disciplinary procedures that were available at that time. It would be improper, in our opinion, to establish a permanent disciplinary procedure to be supervised by the chancellors of this state, or any one of them, that would include investigation, recommendation and, following to conclusion, routine disciplinary complaints. To do so would not only be an unwarranted imposition upon chancellors, but would exceed their inherent authority.

The basis for the inherent authority of trial courts in this sphere was touched upon by Mr. Justice Neil in the 1959 opinion as follows:

> "To be sure there is a limitation upon the inherent authority of every court. But the courts must be trusted with complete authority, consistent with constitutional rights and privileges of all citizens, to *protect its own honor* from those who would prostitute its processes for unlawful personal gain." (Emphasis added.) 206 Tenn. at 14, 330 S.W.2d at 340.

In July 1974, the Tennessee Bar Association petitioned this Court to adopt a single statewide disciplinary enforcement procedure and establish an office of disciplinary counsel for the reason that the several alternative disciplinary procedures then in effect were inadequate and unsatisfactory. After due notice and full opportunity to the lawyers of this state to be heard by written petition and oral argument, we promulgated a new Rule 42 on December 18, 1975, in *Petition of Tennessee Bar Association*, 532 S.W.2d 224. Therein we said this:

> "We find, as thirty-nine other jurisdictions have, that the best efforts of volun-

tary bar associations acting through unpaid individual lawyers and committees cannot perform disciplinary investigations and enforcement at an acceptable level. The present disciplinary procedures of investigation and disposition of charges are inadequate to do justice to the public and the profession. The deficiencies in Rule 42 of this Court are a contributing factor to the ineffectiveness of present procedures." 532 S.W.2d at 229.

It was our intention that new Rule 42 replace all existing procedures for disciplinary enforcement after an appropriate and necessary period of transition. At that time, the alternative procedures embraced within Rule 42, as amended July 19, 1965, allowed lodging a complaint with the Chief Justice, Commissioners appointed by the Supreme Court and the Tennessee Bar Association and local bar committees, and thereafter involved different procedural routes to final termination. One of the many problems with the prior state of alternative procedures was the not infrequent effort to invoke a second or third alternative if not satisfied with the progress or the result of the first procedure utilized. We reached the conclusion, for the reasons stated in 532 S.W.2d 224, and Mr. Justice Harbison's concurring opinion in 539 S.W.2d 805 at 808–809, that a single disciplinary procedure should be established, and until this Court is presented evidence that the present rule is ineffective, in whole or in part, it shall remain the exclusive disciplinary procedure available to the legal profession.

As expressly stated in Section 1.2, Rule 42, the rule does not deny to any court such powers as are necessary to maintain control over proceedings conducted before it, such as the power of contempt. It also does not deny to any court the power to discipline any lawyer by suspension, or disbarment from practice in that particular court, for misconduct directly affecting the processes and proceedings of that court.

It follows that the proceeding in the Chancery Court of Hamilton County, Part I, cause No. 35121, should be terminated upon completion of the investigation and attendant responsibilities heretofore undertaken, and/or transfer of complaints received, to the Disciplinary Counsel. The petition does not recite the number or present status of pending investigations. We are content to leave entirely to the discretion of the Chancellor the decision in each pending complaint whether to continue to final termination under the authority of the procedures approved in *Ex Parte Chattanooga Bar Association, supra,* and conducted in cause No. 35121 of the Chancery Court of Hamilton County, or transfer for completion those complaints that were received subsequent to January 1, 1977; provided that, if there be any complaints received since January 1, 1977, upon which investigation has not commenced on the date this opinion is released, such complaints shall be referred to the Disciplinary Counsel. We are confident that petitioner will lend its best efforts in cooperation with the Chancellor, special masters and Disciplinary Board of the Supreme Court to accomplish a smooth and expeditious transition and termination of the pending complaints.

## II.

It also follows from what we have said in Section I of this opinion that T.C.A. § 29–309 is not available as an alternative disciplinary procedure for use by any bar association or bar committee. Any individual aggrieved by the act or conduct of an attorney may avail himself of the statute, or of course may file his complaint with the disciplinary counsel. See *Chapdelaine v. Haile,* 548 S.W.2d 656 (Tenn.1977).

## III.

■ Rule 42 does not deal with the unauthorized practice of law by laypersons, and the bar associations of this state may and should take appropriate steps with respect to any such practice.

## IV.

■ We applaud all efforts of bar associations to arbitrate fee disputes between

lawyers and their clients and we do not regard pure fee disputes as being within the purview of Rule 42.

The cost of this proceeding is adjudged against petitioner.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.